UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **OSH-SHAKKUR A. DERRICK,**<br><br>    Plaintiff,<br><br>v.<br><br>**WARDEN JOHN CUZZUPE, et. al**<br><br>    Defendants. | Civil Action No.<br><br>2:22-cv-4436 (SDW)(SDA)<br><br>**OPINION** |

**STACEY D. ADAMS, United States Magistrate Judge**

Before the Court is a Motion by Plaintiff, *pro se*, Osh-Shakkur A. Derrick ("Plaintiff"), for appointment of *pro bono* counsel pursuant to 28 U.S.C. § 1915(e)(1) (the "Motion"). [ECF No. 38]. The motion is unopposed. The Court conducted a status conference on the record with parties and counsel present on July 16, 2024 during which the motion was addressed and the parties were heard on this issue. Having considered the Plaintiff's written submissions and arguments, and for the reasons set forth below, Plaintiff's Motion to appoint pro bono counsel is **DENIED.**

**I.   BACKGROUND**

Plaintiff's factual allegations are set forth in the Court's July 18, 2023 Opinion and summarized in the Court's September 29, 2023 Order as follows. [ECF No. 4.] Plaintiff is an inmate currently confined at the Atlantic County Justice Facility in Mays Landing, New Jersey. However, Plaintiff's claims arose while Plaintiff was a pretrial detainee at the Salem County Correctional Facility in Woodstown, New Jersey. [ECF No. 1].

1

Plaintiff alleges that on February 25, 2021, Defendant Officer Finnegan ("Finnegan") "slammed" his head into a brick wall while Plaintiff was restrained, causing "dizziness and a headache." *Id*. at 5. On February 26, 2021, Finnegan and Defendant Officer White ("White") allegedly used "excessive force" during an "in-house arrest" by bending Plaintiff's arms and legs, causing "severe pain" in Plaintiff's knees. *Id*. at 5-6. Also, Plaintiff alleges that Defendant Lieutenant Welch ("Welch") "aggressively rammed" Plaintiff into a cell door. *Id*. at 6. In addition, Finnegan allegedly bent Plaintiff's fingers while he was handcuffed. *Id*. Plaintiff was then allegedly placed into a cell for a strip search, where Welch "attacked" Plaintiff and "flipped" him onto a bed while White and Finnegan held him down. *Id*. Plaintiff alleges that Welch put him in a "wrestling move" and choked Plaintiff, causing "unpleasant pain" in his shoulder and loss of breath. *Id*. Lastly, on May 3, 2021, Officer White allegedly "excessively grabbed" Plaintiff and tried to "drag" Plaintiff into his housing unit. *Id*.

On July 5, 2022, Plaintiff, proceeding *pro se*, filed his Complaint in this action, asserting civil rights claims pursuant to 42 U.S.C. § 1983. [ECF No. 1]. On July 13, 2022, the Court granted Plaintiff's application to proceed *in forma pauperis* (IFP). [ECF No. 2]. On July 18, 2023, the Court issued an Order permitting Plaintiff's claims against Defendants Finnegan, White, and Welch to proceed and dismissing Plaintiff's claims against three other Defendants. [ECF No. 5].

United States Magistrate Judge Elizabeth Pascal denied Plaintiff's request to appoint pro bono counsel without prejudice on September 29, 2023. In support of that motion, Plaintiff only stated the following: "I need a lawyer to represent me. Due to the fact, they are quite more experienced. I've never been in a situation where I had to fight for my rights, legally. Therefore, a lawyer is needed at the time. PLEASE!," and "I'm currently incarcerated and my resources are limited. Also, my funds are low."

Plaintiff has now filed a new motion seeking the appointment for pro bono counsel. Plaintiff advances three arguments in support of his application. First, he claims that because he was transferred to a different facility from the facility where the events occurred, he is facing "litigation hurdles" and does not have access to witnesses, documents or defendants "necessary to make his case." Second, Plaintiff contends that the court must consider whether he has made a reasonable attempt to obtain counsel on his own and, whether, given the difficulty of the case, he is competent to litigate himself. Plaintiff claims he attempted to obtain counsel for this case on his own but "received no good results whatsoever." He does not assert that he is incompetent, but only that he has never litigated a case before and has no knowledge or previous experience. Finally, Plaintiff explains he is working on his appeal for his criminal case, and it is "very hard on me and my family to be on the same page."

## II.   DISCUSSION

Plaintiff has previously applied to the Court seeking the appointment of pro bono counsel, which was denied without prejudice. Accordingly, the Court must review the current application anew to determine if Plaintiff has met his burden.

Generally, there is no right to counsel in a civil case. *See Parham v. Johnson*, 126 F.3d 454, 456 (3d Cir. 1997) ("The Supreme Court has not recognized nor has the court of appeals found a constitutional right to counsel for civil litigants."); *see also Tabron v. Grace*, 6 F.3d 147, 153 (3d Cir. 1993), *cert. denied*, 510 U.S. 1996 (1994). However, a court may appoint *pro bono* counsel if the court permits a litigant to proceed *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(1) (where a litigant is proceeding IFP "[t]he court may request an attorney to represent any person unable to afford counsel"); *see also* L.Civ.R. App. H. As the Court has allowed Plaintiff to proceed IFP pursuant to its July 13, 2022 Order, the Court can proceed on the merits of Plaintiff's request.

3

Courts have broad discretion in determining whether to appoint counsel. *Houser v. Folino*, 927 F.3d 693, 698 (3d Cir. 2019) (citing *Tabron*, 6 F.3d at 153). In exercising that discretion, the Court first "must consider as a threshold matter the merits of the plaintiff's claim." *Tabron*, 6 F.3d at 155. Upon finding that this threshold showing has been made, "the court should then consider a number of additional factors that bear on the need for appointed counsel." *Id.* These factors may include:

> (1) the plaintiff's ability to present his or her own case; (2) the complexity of the legal issues; (3) the degree to which factual investigation will be necessary and the ability of the plaintiff to pursue such investigation; (4) the amount a case is likely to turn on credibility determinations; (5) whether the case will require the testimony of expert witnesses; (6) whether the plaintiff can attain and afford counsel on his own behalf.
>
> *Parham*, 126 F.3d at 457; *see Tabron*, 6 F.3d at 156, 157 n.5.

These factors apply to not only the initial request for counsel, but any successive applications. *Houser*, 927 F.3d at 698.

With these principles in mind, the Court first considers as a threshold matter whether Plaintiff's claims have "some arguable merit in fact and law." *Montgomery v. Pinchak*, 294 F.3d 492, 498-99 (3d Cir. 2002) (citing *Tabron*, 6 F.3d at 155). For purposes of this Motion only, this Court will assume, without deciding, that Plaintiff's claims have some facial merit, as that determination was already reached in the Court's previous decision on Plaintiff's first request for the appointment of pro bono counsel. *See Anderson v. Salerno*, No. 19-cv-19926, 2021 WL 11585761, at *1 (D.N.J. Feb. 11, 2021) (assuming solely for purposes of a *pro bono* motion that a plaintiff's case has some arguable merit in fact and law); *Muslim v. D'Ilio*, No. 15-cv-05796, 2018 WL 4522048, at *4 (D.N.J. Sept. 21, 2018) (same). The Court, therefore, turns to the *Tabron* factors to assess whether Plaintiff has met his burden to warrant appointment of counsel in this case.

4

The first *Tabron* factor considers "the plaintiff's ability to present his or her own case," which may be measured by "the plaintiff's education, literacy, prior work experience, and prior litigation experience." *Tabron*, 6 F.3d at 156. This factor is "[p]erhaps, the most significant of *Tabron*'s post-threshold factors." *Montgomery*, 294 F.3d at 501.  If the plaintiff is a prisoner, the Court may also consider the plaintiff's ability to access necessary resources such as a typewriter, photocopier, telephone, and computer. *See Parham*, 126 F.3d at 459. Plaintiff does not allege that he is incompetent, illiterate or that he lacks the education necessary to litigate this case.  Nor does he claim that he has difficulty accessing necessary resources. Instead, Plaintiff indicates that the only reason he is limited in performing his obligations in this lawsuit is because he has never litigated a case before.  Plaintiff's prior Court filings, including his ability to file his own complaint, a successful application to proceed IFP, and his prior motion for the appointment of counsel all indicate that (i) he has access to resources such as books and computers in the prison's library sufficient to allow him to conduct the necessary research and prepare the appropriate paperwork to represent himself; and (ii) that he has the competency and know-how to adequately represent himself in this matter.  Indeed, his latest filing demonstrates this fact – as his moving papers competently cite to supporting case law. Plaintiff's submissions indicate that he is able to adequately read, write, and understand English.  For these reasons, the Court finds that the first *Tabron* factor does not weigh in Plaintiff's favor.

The second *Tabron* factor requires the Court to assess the complexity of the legal issues. *Tabron*, 6 F.3d at 156. Courts should be more inclined to appoint counsel when the legal issues are complex.  *Tabron*, 6 F.3d at 156 ("[W]here the law is not clear, it will often best serve the ends of justice to have both sides of a difficult legal issue presented by those trained in legal analysis." (quoting *Maclin v. Freake*, 650 F.2d 885, 889 (7th Cir. 1981))).  Plaintiff does not address this

factor in his Motion, once again. While this matter has been pending for two years, there is no indication that this matter is especially complex or will involve unsettled areas of the law. *See, e.g.*, *Howard v. Reyes*, No. 18-800, 2020 WL 3958483, at *2 (D.N.J. July 13, 2020) (concluding that a *pro se* plaintiff's 42 U.S.C. § 1983 excessive force claims were "straightforward" and did not involve unsettled law). Therefore, the second *Tabron* factor weighs against the appointment of counsel.

Turning next to the third *Tabron* factor, the Court must examine "the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation." *Tabron*, 6 F.3d at 156 (citations omitted). "Where the claims are likely to require extensive discovery and compliance with complex discovery rules, appointment of counsel may be warranted." *Id.* (citation omitted). At this juncture, Defense counsel has indicated in correspondence to the Court that Plaintiff has not fulfilled his discovery obligations. In support of his motion, Plaintiff indicates that he is having difficulty obtaining the discovery that he needs, but he provides no detail as to what discovery has been requested, and what he is unable to obtain. Further, he contends that because the incidents that are at the center of this lawsuit happened at a different facility from where he is now incarcerated, he lacks access to witnesses, documents or defendants necessary to make his case. However, Plaintiff does not indicate what witnesses or documents he needs, depriving the Court of the ability to assess whether he is truly hampered from accessing this information. Further, to the extent he requires access to defendants, he does not explain why the mechanisms provided for party discovery under the Federal Rules of Civil Procedure are inadequate. For example, he has the ability to serve interrogatories and discovery requests on the party defendants to obtain information. If he requires documents from the prison, he has the ability to serve discovery requests or third party subpoenas. Thus, while the Court

appreciates the fact that Plaintiff may face some challenges given the fact that he is incarcerated, he is not wholly without resources and has not provided any information with particularity as to what he needs that he would be unable to obtain absent the assistance of counsel. Plaintiff is already aware of the dates, times and locations of the alleged incidents of excessive force. He knows the identities of witnesses present, if any. The case is not complex, and it does not appear that any investigation into this case will be extensive. Thus, Court finds that the third *Tabron* factor is, at best, neutral and does not weigh in favor of appointment of counsel.

The fourth *Tabron* factor measures the degree to which "a case is likely to turn on credibility determinations . . . ." *Tabron*, 6 F.3d at 156. Generally, this factor weighs in favor of appointment of counsel only in circumstances where the trial is expected to be "solely a swearing contest." *Parham*, 126 F.3d at 460. When it is unclear whether the case will turn on credibility determinations, then the fourth factor does not support the appointment of pro bono counsel. *See Ryan v. Robinson*, No. 22-cv-1175, 2023 WL 3034130, at *3 (D.N.J. Apr. 21, 2023) ("It is unclear whether documents substantiating the parties' claims and defenses will be produced, or whether the parties will largely rely upon credibility."); *see also Andrews v. Whittaker*, No. 13-cv-4812, 2017 WL 935159, at *3 (D.N.J. Mar. 9, 2017) (finding the fourth *Tabron* factor neutral where the Court lacked information to determine whether the case would be "solely a swearing contest"); *Marley v. Donahue*, No. 14-cv-1597, 2014 WL 12617284, at *3 (D.N.J. Oct. 20, 2014) (same). Plaintiff does not address this factor at all in his moving papers, despite having it explained to him in the Court's previous decision on his first motion seeking the appointment of counsel. He does not identify whether this case will turn on the testimony of fact witnesses or whether there is other evidence that may be relied upon beyond witness testimony, such as documentation or videos of the incident. Indeed, he does not identify any fact witnesses *at all*.

As noted in the Court's earlier decision, Plaintiff's complaint indicates that the incidents at issue were captured on body cameras. Further, during the most recent status conference (conducted on the record), Defendants' counsel indicated that there was close circuit video of the incident that was produced to Plaintiff as part of Defendants' Rule 26 initial disclosures. Thus, it appears there will be evidence beyond mere witness testimony and the case will not necessarily turn solely on credibility determinations. Accordingly, the Court the fourth *Tabron* factor weighs against the appointment of counsel.

The fifth *Tabron* factor requires the Court to consider whether "the case will require testimony from expert witnesses." *Tabron*, 6 F.3d at 156 (citation omitted). Plaintiff did not address this factor in his motion, nor did he address it in his previous application to the Court. During the status conference, Plaintiff indicated he may call the psychologist from the Salem prison as a fact witness, but at this time he has identified experts that he intends to retain.[1] Thus, the Court finds that the fifth *Tabron* factor does not weigh in Plaintiff's favor.

Finally, the Court considers Plaintiff's financial ability to attain and afford counsel. *See Tabron*, 6 F.3d at 156. The Court recognizes that Plaintiff is incarcerated and has been granted permission to proceed IFP, which is indicative of an inability to afford counsel. *See Montgomery*, 294 F.3d at 505 (finding that approval of a plaintiff's IFP application evidences a plaintiff's inability to afford counsel under the sixth *Tabron* factor if the plaintiff's financial situation has not changed). However, Plaintiff does not claim in his moving papers that he cannot afford to retain counsel. He does not provide any financial affidavit or explanation of his finances. Instead, he states only that "he tried to obtain counsel and received no good results whatsoever." This statement suggests that Plaintiff has the means to afford counsel, but simply has been unable to

---

[1] The parties were given until August 30, 2024 to designate experts.

8

find someone that is satisfactory to him. Plaintiff again reiterated on the record during the status conference that, with the assistance of his mother, he has been actively seeking counsel. He did not state he cannot afford counsel. Accordingly, while the Court is cognizant that Plaintiff has financial restraints, there is nothing in the record to suggest that he cannot afford counsel and Plaintiff's actions suggest otherwise. Therefore, the final *Tabron* factor also weighs against the appointment of counsel.

### III.   CONCLUSION

In summary, the Court finds the five of the six *Tabron* factors do not weigh in Plaintiff's favor. Only the third factor is neutral and leans against the appointment of counsel. Under the totality of the circumstances, Plaintiff's request for appointment of pro bono counsel is therefore denied without prejudice.

For the foregoing reasons, Plaintiff's Motion to Appoint Pro Bono Counsel is **DENIED.**

Dated: August 14, 2024

*s/ Stacey D. Adams*
Hon. Stacey D. Adams
United States Magistrate Judge