UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| OSH-SHAKKUR A. DERRICK, | Civil Action No. 22-4436 (SDW-SDA) |
| Plaintiff, | |
| v. | OPINION |
| OFFICER FINNEGAN, et al., | |
| Defendants. | |

**WIGENTON**, District Judge:

Presently before this Court is the motion for summary judgment ("Motion") filed by Defendants Officer Charles Finnegan, Lieutenant Earnest Welch, and Officer Patrick White (collectively "Defendants"). (ECF No. 62). *Pro se* Plaintiff Osh-Shakkur A. Derrick opposes the Motion. (ECF No. 65).

This Court will determine the Motion on the briefs pursuant to Federal Rule of Civil Procedure 78(b). For the following reasons, the Motion is granted in part and denied in part.

## I. FACTS AND PROCEDURAL HISTORY

### A.   Undisputed Facts[1]

Plaintiff was a pretrial detainee in the Salem County Correctional Facility ("SCCF") in February and May 2021. (Defendants' Statement of Material Facts ("DSMF") ECF No. 62-1 ¶ 1).

---

[1] Plaintiff's opposition asserts "that there are many material facts in dispute" but did not include "a responsive statement of material facts, addressing each paragraph of the movant's statement" or "a supplemental statement of disputed material facts … ." Local Civ. R. 56.1(a). Accordingly, this Court considers Defendants' statement of material facts to be "undisputed for purposes of the summary judgment motion." L. Civ. R. 56.1(a).

1

Defendants were employed as corrections officers at SCCF in February and May 2021. (*Id.* ¶¶ 23, 39, 50).

        1. *February 25, 2021 Incident*

On February 25, 2021, SCCF Sergeant Sean Daly was observing the moving of inmates when he saw Plaintiff "delaying the movement" and being disrespectful to the escort officer. (*Id.* ¶ 4). Plaintiff was complaining about his footlocker being unavailable, and Sergeant Daly ordered Plaintiff to "lower his voice and go to lockdown." (*Id.* ¶ 5). Plaintiff refused, and Sergeant Daly interpreted this as "a challenge to authority in the presence of other inmates and disruptive to good order." (*Id.*) Sergeant Daly summoned a response team to the area. (*Id.* ¶ 6). Officer Finnegan responded to the call. (*Id.* ¶ 10). Plaintiff was ordered to place his hands on the cell wall, and he complied. (*Id.* ¶ 11). Plaintiff was handcuffed once the officers entered the cell. (*Id.* ¶ 12). Plaintiff "tried to pull away" from the officers escorting him out of the cell. (*Id.* ¶ 13). He was placed against the wall, and his head was secured forward "[d]ue to [Plaintiff's] aggressive behavior and for officer safety … ." (*Id.* ¶ 14). Plaintiff was taken to medical after being secured, where he told Nurse Jennine Mecholsky that his head had been "banged on the wall." (*Id.* ¶ 15). Nurse Mecholsky examined Plaintiff but did not find any marks on his head. (*Id.* ¶ 17). Plaintiff then stated that his "head was banged a little soft." (*Id.* ¶ 18). Nurse Mecholsky noted that Plaintiff "ambulated with a steady gait" and that his "[s]kin was dry and intact." (*Id.* ¶ 22). She noted that his pupils were equal and reactive to light.[2] (*Id.*) Plaintiff was strip searched once he was taken back to his cell. (*Id.* ¶ 19).

---

[2] Defendants use the acronym PEARL, which they later define as "pupils equal and reactive to light." (ECF No. 62-2 at 8).

2. *February 26, 2021 Incident*[3]

Officer Finnegan and Officer White were collecting trays the next day when Plaintiff said: "'you know that shit yesterday was bullshit.'" (*Id.* ¶ 24). Officer Finnegan told Plaintiff to be quiet and to return his tray. (*Id.*) Plaintiff made a quiet comment, and Officer Finnegan told him to be quiet again and that "continued failure to comply with directives would result in charges." (*Id.* ¶ 25). Plaintiff continued: "'You know what it is Finnegan. That was bullshit.'" (*Id.* ¶ 26). Officer Finnegan told Plaintiff that he would be receiving charges; Plaintiff made a gun shape with his hand, pointed at Officer White and Officer Finnegan, and made a gunfire sound. (*Id.* ¶ 27). Officer Finnegan told Plaintiff to lockdown, but Plaintiff responded "'[n]ah, I'll just fuck you up now.'" (*Id.*) Plaintiff "put his cup down, freeing his hands and adjusting his pants, which were pre-indicators of violence." (*Id.*) The officers directed Plaintiff to put his hands on the wall, but he refused and grabbed his cup. (*Id.* ¶ 28). Officer White held Plaintiff's shoulders and took him to the ground to prevent Plaintiff from throwing the cup's liquid at the officers. (ECF No. 62-4 at 62). Officer Finnegan secured Plaintiff's legs in a figure four position. (*Id.* at 53). Plaintiff tried to kick the officers off, but the officers were able to place ankle locks on Plaintiff. (DSMF ¶ 29).

Officers White and Finnegan called a code and requested assistance. (*Id.* ¶ 30). Officers White and Finnegan helped Plaintiff to his feet and took him upstairs. (*Id.*). Plaintiff pulled away and tried to face Officer White. (*Id.* ¶¶ 31, 57). Plaintiff pulled away from the officers again at the top of the stairs and was secured to the wall. (*Id.* ¶ 31). Officer Finnegan "secured [Plaintiff's] right wrist without pressure." (*Id.*) The officers put Plaintiff into a cell, "assisted [Plaintiff] to a

---

[3] Although the Statement of Facts references Lieutenant Welch's verification regarding the February 26, 2021 incident as being Exhibit I, (DSMF ¶ 48), the verification was not included in the exhibit. Exhibit I is Officer White's certification. (*See* ECF No. 62-4 at 56-59).

3

kneeling position," and removed his handcuffs. (*Id.* ¶ 32). Plaintiff sat on the bunk as ordered. (*Id.*)

Plaintiff was examined by Nurse Timothy Thomas due to Plaintiff's complaints of "dizziness, lightheadedness and finger pain." (*Id.* ¶ 33). Nurse Thomas did not find any evidence of injuries on Plaintiff. (*Id.*) Officers White and Finnegan began to strip search Plaintiff but stopped when he again complained of dizziness and lightheadedness. (*Id.*) Nurse Thomas examined Plaintiff again and did not find any injuries. (*Id.*) The officers continued the strip search, pausing briefly when Plaintiff became uncooperative. (*Id.* ¶ 34). At the end of the search, Plaintiff said "'[s]ee y'all later,'" which Officer Finnegan interpreted as a threat. (*Id.*)

Lieutenant Welch ordered Plaintiff to lie face down on the bunk, but Plaintiff refused to comply. (*Id.* ¶ 63). Lieutenant Welch and Officer White tried to secure Plaintiff, but Plaintiff "resisted by posting his arm and pushing his weight against the officers and attempting to stand." (*Id.*) Officer Finnegan secured Plaintiff's legs in a figure four position, secured the right ankle in an ankle lock, and applied pressure to the ankle. (*Id.* ¶ 36). Officer Finnegan removed the pressure once Plaintiff stopped resisting but continued to hold Plaintiff. (*Id.*) Officer White held Plaintiff's left shoulder in a shoulder lock. (*Id.* ¶ 63). Nurse Thomas returned and examined Plaintiff a third time. (*Id.* ¶ 68). Plaintiff stated that he had been choked and that his shoulder hurt. (*Id.*) Neither Officer White nor Officer Finnegan saw Plaintiff being choked. (*Id.* ¶¶ 48, 64). Nurse Thomas did not find any evidence of injuries. (*Id.* ¶ 68).

### 3. *May 3, 2021 Incident*

On May 3, 2021, Officer White ordered Plaintiff to return to the sally port, but Plaintiff continued to walk towards unit A-1. (*Id.* ¶ 71). Officer White grabbed Plaintiff's right shoulder by the shirt, and Plaintiff said "'[d]on't grab me bro.'" (*Id.* ¶ 72). Officer White again ordered

4

Plaintiff to return to the sally port, and Plaintiff refused again. (*Id.* ¶ 73). Officer White tried to bring Plaintiff to the sally port, but Plaintiff "actively resisted by dropping his weight in an attempt to remain in the unit." (*Id.*) Officer White then held Plaintiff's right arm and left shoulder, brought him to the sally port, and handcuffed Plaintiff on a door. (*Id.* ¶ 74). A code was called, and Plaintiff was escorted to medical for examination. (*Id.* ¶ 75). Nurse Michele Woodside examined Plaintiff and did not find any injuries. (*Id.*) Plaintiff was taken to unit B-3 by Officer White and Officer Perez. (*Id.* ¶ 76). Plaintiff told Officer White "'[y]ou grab me like that again, there's going to be a problem.'" (*Id.* ¶ 77). Plaintiff was strip searched. (*Id.* ¶ 79).

**B.     Procedural History**

Plaintiff filed his *pro se* complaint on July 5, 2022, against SCCF Warden John Cuzzupe, Officer Pierce, Lieutenant Crawford, Officer White, Officer Finnegan, and Lieutenant Welch. (ECF No. 1). The Honorable Robert B. Kugler, D.N.J., reviewed the complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and permitted it to proceed in part. (ECF No. 5). Judge Kugler dismissed the claims against Warden Cuzzupe, Lieutenant Crawford, and Officer Pierce for failure to state a claim but permitted Plaintiff to pursue excessive force claims against Officer White, Officer Finnegan, and Lieutenant Welch. (*Id.*) The matter was reassigned to this Court on June 21, 2024. (ECF No. 48).

Defendants filed their Motion on October 31, 2024. (ECF No. 62). Plaintiff submitted opposition on January 7, 2025. (ECF No. 65). Defendants filed a reply on January 9, 2025. (ECF No. 67). Plaintiff filed a sur-reply, (ECF No. 68), and Defendants filed a sur-response, (ECF No. 70).

## II. DISCUSSION

### A. Legal Standard

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The moving party has the initial burden of showing the basis for its motion and that there is no genuine dispute of material fact. *See Celotex Corp.*, 477 U.S. at 323. The moving party must cite specific materials in the record. Fed. R. Civ. P. 56(c)(1)(A). "[T]he burden on the moving party may be discharged by 'showing' … that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the moving party has satisfied its burden, the non-moving party, "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, the evidence must be more than a scintilla." *Hugh v. Butler Cnty. Fam. YMCA*, 418 F.3d 265, 267 (3d Cir. 2005) (citing *Anderson*, 477 U.S. at 251). The moving party is entitled to judgment as a matter of law when the non-moving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp.*, 477 U.S. at 323.

**B.     Analysis**

Defendants move for judgment as a matter of law on Plaintiff's claims of unreasonable force in violation of the Fourteenth Amendment. (ECF No. 65). "[T]he appropriate standard for a pretrial detainee's excessive force claim is solely an objective one." *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015). This standard requires "careful attention to the facts and circumstances of each particular case," including "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 194-95 (3d Cir. 2021) (internal quotation marks omitted). "An express intent to inflict unnecessary pain is not required … ." *Whitley v. Alber*, 475 U.S. 312, 319 (1986).

   1. *February 25, 2021 Incident*

Plaintiff alleges that Officer Finnegan used excessive force against him on February 25, 2021 when Officer Finnegan "excessively slammed [Plaintiff's] head into brick wall." (ECF No. 62-4 at 34). According to Plaintiff's interrogatory answers, Officer White and Lieutenant Welch were not present. (*Id.*) Therefore, this Court will award summary judgment to Officer White and Lieutenant Welch on this claim as Plaintiff has not shown they were personally involved. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018) ("[I]n the face of motion for summary judgment, a § 1983 plaintiff must produce evidence supporting each individual defendant's personal involvement in the alleged violation to bring that defendant to trial.") This Court will also award summary judgment to Officer Finnegan after reviewing the submitted evidence, including body camera footage of the incident.

Officer Finnegan certified that he responded to a call requesting officer assistance on February 25, 2021. (ECF No. 62-4 at 45). He went to cell 15 where Plaintiff had been ordered to place his hands on the cell wall. (*Id.*) Plaintiff complied, and the officers handcuffed Plaintiff after entering the cell. (*Id.* at 46). While Officer Finnegan was helping to escort Plaintiff down the hall, Plaintiff tried to pull away from the other officer. (*Id.*) Officer Finnegan "secured" Plaintiff's head forward on the wall. (*Id.*) Officer Finnegan took Plaintiff to the medical unit for evaluation once Plaintiff stopped resisting. (*Id.*) Nurse Mecholsky examined Plaintiff but did not find any marks on his head. (*Id.* at 49). She noted that his pupils were equal and reactive to light. (*Id.* at 48). Plaintiff has not submitted any evidence to contradict Officer Finnegan's sworn statement, stating only that there are "many material facts in dispute" without explaining which facts are in dispute. (ECF No. 65 at 2; ECF No. 68 at 2).

"Where the events at issue have been captured on video, the court must view the facts as depicted in the video when determining whether any genuine issue of fact remains for trial." *Hunter v. Sutter*, No. 23-cv-00287, 2024 WL 5319122, at *3 (W.D. Pa. Nov. 27, 2024), *report and recommendation adopted*, No. 23-cv-00287, 2025 WL 72806 (W.D. Pa. Jan. 10, 2025); *see also Scott v. Harris*, 550 U.S. 372, 380-81 (2007) (relying on a video recording in assessing summary judgment evidence and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape."). The body camera footage for this event supports Officer Finnegan's statement.

As is relevant here, the footage depicts an officer escorting Plaintiff through a common area of SCCF, followed by Officer Finnegan. (*See, e.g.*, AXON_ Body_Video_2021-02-

25_1406(2) at 1:14).[4]  At several points during the escort, Plaintiff turns around to address the officers walking behind him, including Officer Finnegan, saying they were "taking real advantage of those uniforms" and that he could talk to them however he pleased because they were all men at the end of day.  (*Id.* at 1:28 to 1:35).  Plaintiff was then taken through two sets of doors.  (*Id.* at 1:40).  Plaintiff can be seen taking a large step away from the escorting officer shortly after passing through the second set of doors.  (*Id.* at 1:45).  The escorting officer puts Plaintiff up against the wall.  (*Id.* at 1:46).  A hand appears and guides Plaintiff's head to the wall.  (*Id.* at 1:49).  The movement is slow, and Plaintiff does not make any sounds indicating he is in pain.  (*Id.* at 1:51).  An officer tells Plaintiff to "not pull away no more," and Plaintiff begins to chuckle, saying "it's cool though" and "y'all are gonna see" a few times.  (*Id.* at 1:53 to 2:13).  The body camera footage from the officer escorting Plaintiff further confirms that Officer Finnegan did not slam Plaintiff's head into the wall.  (AXON_ Body_Video_2021-02-25_1407(1) at 1:25).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).  Here, the body camera footage thoroughly refutes Plaintiff's allegations.  The footage shows Plaintiff was actively resisting by trying to pull away from the escorting officer.  A loose detainee poses a security risk to the escorting officers and other people in the jail, so there was a need to restrain Plaintiff.  Officer Finnigan used only the amount of force necessary to ensure Plaintiff did not pull away from the escorting officers.  The footage does not show Plaintiff in any

---

[4] The body camera footage was submitted on a flash drive that shall be maintained by this Court. This Court will identify the name of the officer whose footage is being referenced where possible; otherwise, the file name of the footage shall be used.  Time references are to the video minute marks.

physical distress, and a medical examination revealed no injuries. Indeed after the medical examination, Plaintiff changed his story to allege that Officer Finnegan had only "banged [his head] a little soft." (ECF No. 62-4 at 49). Accordingly, "a reasonable jury would have to conclude that force was reasonable under the circumstances … ." *Tindell v. Beard*, 351 F. App'x 591, 596 (3d Cir. 2009).

Defendants are entitled to judgment as a matter of law for the February 25, 2021 incident.

### 2. *February 26, 2021 Incident*

Plaintiff alleges that Officer Finnegan used excessive force against him on February 26, 2021 when Officer Finnegan put Plaintiff in an ankle lock, bent Plaintiff's knees roughly, bent Plaintiff's fingers back, and held him down even though Plaintiff was "unresistant." (ECF No. 62-4 at 34). He asserts Officer White put him into figure four locks, roughly bent his arm and shoulder, ran him into a cell door, choked him, and injured his shoulder. (*Id.*) Plaintiff alleges Lieutenant Welch slammed him onto the cot while Plaintiff was naked and held him down so the other officers could "tag team" him. (*Id.*) This Court considers the February 26, 2021 incident to be comprised of three separate encounters: (1) the initial takedown (Officers White and Finnegan); (2) the walk to the cell (Officers White and Finnegan); and (3) the restraint inside the cell (all Defendants). This Court concludes that Defendants are entitled to judgment as a matter of law on the first two encounters, but there are genuine issues of material fact preventing summary judgment on the third encounter.

#### a. Initial Takedown

According to the undisputed facts, Plaintiff threatened Officers Finnegan and White while they were collecting trays. (DSMF ¶¶ 27-28). Plaintiff made a gun shape with his hand, pointed at Officer White and Officer Finnegan, and made a gunfire sound. (*Id.* ¶ 27). He then told Officer

10

Finnegan that he would "'fuck [him] up now'" when Officer Finnegan ordered Plaintiff to lockdown. (*Id.* ¶ 27). Plaintiff put his cup down and made movements that suggested he was preparing to fight Officers Finnegan and White. (*Id.*) The officers directed Plaintiff to put his hands on the wall, but he refused and grabbed his cup. (*Id.* ¶ 28). Officer White held Plaintiff's shoulders and took him to the ground to prevent Plaintiff from throwing the cup's liquid at the officers. (ECF No. 62-4 at 62). Officer Finnegan secured Plaintiff's legs in a figure four position. (*Id.* at 53). Plaintiff tried to kick the officers off, but the officers were able to place ankle locks on Plaintiff. (DSMF ¶ 29).

No reasonable juror could conclude that Officers Finnegan and White used unreasonable force in restraining Plaintiff. There was an imminent threat to officer safety, and Plaintiff ignored their instructions and attempts to deescalate the situation. Officer White can be heard on his body camera telling another officer that Plaintiff "wanted to fight [Officer] Finnegan." (White 2/26 Footage at 0:59). Officers Finnegan and White needed to restrain Plaintiff after this threat, and Officer White's body camera footage clearly indicates that the officers only used the force that was necessary to accomplish that goal. (*Id.* at 0:03 to 0:38). "Officers facing disturbances 'are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.'" *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 195 (3d Cir. 2021) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 399 (2015)). Plaintiff's injuries from this encounter were minor; there is no indication in either officers' camera footage video that Plaintiff is in pain. (White 2/26 Footage at 0:03 to 0:38; Finnegan 2/26 Footage 0:03 to 0:28). In sum, no reasonable juror could conclude that Officers Finnegan and White used unreasonable force during this encounter.

b. Walk to the Cell

Next, Plaintiff asserts that Officers Finnegan and White used unreasonable force in taking Plaintiff to his cell. Here, the undisputed facts show that Plaintiff was turning around and pulling away from Officer White on the stairs. (Finnegan 2/26 Footage at 1:03 to 1:14). Officer White held Plaintiff against a door. (*Id.* at 1:15). Plaintiff appears to struggle against the officers, and Officer Finnegan helped Officer White restrain Plaintiff. (*Id.* at 1:19 to 1:52). As was the case during the first encounter, there was an active safety threat to the officers escorting Plaintiff up the stairs. Plaintiff asserts that his right pointer finger was injured. (ECF No. 62-4). A minimal injury does not necessarily mean that the force used was minimal, *see Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002), but when considered as part of the totality of the circumstances, Plaintiff's minimal injury further supports a conclusion that the force used was reasonable. Plaintiff has not submitted any evidence that contradicts the video footage or otherwise creates a disputed issue of material fact.

c. Inside the Cell

The same cannot be said for the third encounter on February 26, however. Here, there are disputed facts about the reasonableness of the force used against Plaintiff while he was inside the cell. According to Officer White and Officer Finnegan, Plaintiff was ordered to keep his hands on his head until they left Plaintiff's cell. (ECF No. 62-4 at 54-55, 64). Plaintiff placed his hands on his head, and the officers began to leave the cell. (*Id.*) Plaintiff then said "see y'all later," which the officers interpreted as a threat. (*Id.* at 55, 64). Lieutenant Welch ordered Plaintiff to lie down

on his stomach, which Plaintiff refused to do. (*Id.*) Defendants then pinned Plaintiff to the bed and restrained his limbs. (*Id.*)

The footage from Officer Perez's camera provides the best view of the incident.[5] At the 11:25 minute mark, Plaintiff is completely naked and sitting on his bed with his hands on his head. Plaintiff says "see y'all later" and removes his hands from his head. (Perez 2/26 Footage at 11:32). Lieutenant Welch responds, "you know what, lie down" and gestures for Plaintiff to get on his stomach. (*Id.* at 11:32). Plaintiff ignores Lieutenant Welch and begins to gather his clothing. (*Id.* at 11:35). He does not make any gestures towards Lieutenant Welch or the other officers in the cell. (*Id.* at 11:36). Officer White grabs Plaintiff's shoulder while Lieutenant Welch grabs his head. (*Id.* at 11:37). Plaintiff is then lifted onto the bed by Lieutenant Welch, Officer White, and Officer Finnegan. (*Id.* at 11:43). From here, Officer Finnegan's body blocks Officer Perez's camera, but Plaintiff can be heard screaming in pain as the officers lie on top of him. (*Id.* at 11:51). He screams for over a minute. Plaintiff stated in his interrogatory answers that he continues to experience pain in his left shoulder and needed an x-ray afterwards. (ECF No. 62-4 at 35).

"Here, even when the circumstances are viewed from the perspective of a reasonable officer, the evidence construed in the light most favorable to [Plaintiff] could lead a reasonable jury to find that [Defendants] used objectively unreasonable force." *Jacobs v. Cumberland Cnty.*, 8 F.4th 187, 195 (3d Cir. 2021). A reasonable juror could conclude that Defendants were no longer facing an active disturbance or other threat to security by the time everyone was inside the cell. The body camera footage shows that Plaintiff objected to certain requests during the strip search

---

[5] Defendants have also provided the footage from Lieutenant Welch's, Officer White's, and Officer Finnegan's cameras, but the movements in those videos are too fast or obscured to provide a clear picture of what is occurring during the crucial moments.

but generally cooperated and was calmly seated on his bed at its conclusion. *See Spada v. Houghton*, No. 22-2816, 2024 WL 4784382, at *3 (3d Cir. Nov. 14, 2024) (reversing grant of summary judgment on unreasonable force claim when plaintiff had been disruptive earlier but had stopped before the use of force).

     A reasonable juror could also conclude that Plaintiff had ceased to be a threat to the officers. Plaintiff had just completed a strip search, which means that he was completely naked and that the officers had verified that Plaintiff did not have any weapons or other contraband. The alleged threat here, "see y'all later," is distinguishable from Plaintiff's earlier threat. This comment was not accompanied by a physical gesture indicating violence, unlike earlier when Plaintiff made a gun shape with his hand. A general statement that Plaintiff would see everyone later is not a clearly threatening remark like Plaintiff's earlier statement that he would "'fuck [Officer Finnegan] up now.'" Although he did disobey an order to keep his hands on his head, Plaintiff was gathering his clothes and was not focused on the officers. A juror could reasonably conclude that there was no chance Plaintiff was reaching for a weapon inside the clothes pile because the clothes had been searched minutes before. Therefore, it would be reasonable to conclude that there was no ongoing safety issue that warranted three officers restraining Plaintiff, climbing on top of him, wrenching his shoulder to the point that he screamed in pain, and possibly choking him.[6]

---

[6] Whether Plaintiff was choked is disputed. Plaintiff stated under penalty of perjury that Officer White choked him. (ECF No. 62-4 at 34). Officer Finnegan denied seeing anyone choke Plaintiff. (*Id.* at 55). Officer White also denied seeing anyone choking Plaintiff but did not deny choking Plaintiff himself. (*Id.* at 64). The body camera footage does not blatantly contradict either version, so a jury must make this factual determination.

14

This Court denies summary judgment as to this encounter as there are disputed issues of material fact.

   *3. May 3, 2021 Incident*

Finally, Plaintiff alleges Officer White "excessively grabbed [him]" and "forced [him] in the sally port." (ECF No. 62-4 at 34).[7] According to Officer White's certification, he was moving inmates into unit A-1 when Plaintiff said "'Fucking f****t, I'll smack the shit out of you.'" (*Id.* at 57). Officer White ordered Plaintiff to come back to the sally port, but Plaintiff refused to comply. (*Id.* at 58). Officer White grabbed Plaintiff's shirt and pulled him back into the sally port. (*Id.*) Plaintiff physically resisted Officer White's efforts, responding "don't grab me, bro," so Officer White grabbed Plaintiff's right arm and left shoulder and held him against the wall. (*Id.*) Plaintiff told Officer White: "you grab me like that again there's going to be a problem." (White 5/3 Footage at 2:49). Plaintiff was not injured because of this encounter. (ECF No. 62-4 at 34).

A reasonable juror, presented with the evidence and applying an objective standard, could not find in Plaintiff's favor on this claim. Plaintiff made an unambiguous threat of violence towards Officer White and refused to come back when ordered. He physically resisted Officer White's attempt to bring him into the sally port, creating an ongoing safety issue which justified restraining Plaintiff so he could not carry out his threat. *See Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (listing "whether the plaintiff was actively resisting" as a relevant factor in considering reasonableness of force). The restraint was limited to holding Plaintiff's right arm and left shoulder and holding him against the wall, and Plaintiff admits that he was not injured.

---

[7] According to Plaintiff's interrogatory answers, Officer Finnegan and Lieutenant Welch were not involved in this incident. (ECF No. 62-4 at 34). Therefore, this Court will award summary judgment to Officer Finnegan and Lieutenant Welch on this claim as Plaintiff has not shown they were personally involved. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 291 (3d Cir. 2018).

Plaintiff has not produced any evidence that would permit a reasonable juror to conclude that Officer White's use of force was objectively unreasonable after considering the totality of the circumstances. Therefore, this Court will grant summary judgment to Officer White for this incident.

### III. CONCLUSION

For the reasons stated above, this Court will grant in part and deny in part Defendants' Motion. Summary judgment is denied as to the February 26, 2021 use of force inside Plaintiff's cell. Summary judgment is granted as to all other claims. An appropriate order follows.

Date: _____March 7\_\_\_, 2025

_____
Hon. Susan D. Wigenton
United States District Judge